IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES NEWTON, II, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV242 |
| | ) | |
| v. | ) | |
| | ) | |
| STANDARD CANDY COMPANY, INC., | ) | |
| a Corporation, | ) | |
| | ) | |
| Defendant and | ) | MEMORANDUM AND ORDER |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JIMBO'S JUMBOS, INC., a | ) | |
| Corporation, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

This matter is before the court on defendant Standard Candy's motion for summary judgment pursuant to Fed. R. Civ. P. 56, Filing No. 49, and third-party defendant Jimbo's Jumbos, Inc.'s motion for summary judgment pursuant to Fed. R. Civ. P. 56(b), Filing No. 53. Plaintiff brought this action against the defendant Standard Candy under the theories of negligence, breach of contract for implied warranty of merchantability, and strict liability. Filing No. 1. Plaintiff later filed a second amended complaint and added a failure to warn claim. Filing No. 101. Plaintiff initially filed this action in Scottsbluff, Nebraska, but defendant removed the case to Nebraska federal court. Filing No. 3. Thereafter, defendant Standard Company filed a third-party complaint against Jimbo's Jumbos, Inc., the supplier of the peanuts that were in the Goo Goo Cluster purchased by the plaintiff which is the subject of this litigation, seeking subrogation, contribution and indemnity.

Filing No. 7. For purposes of jurisdiction and conflict of laws, plaintiff is a resident of Nebraska, Standard Candy is a resident of Tennessee, Jimbo's is a North Carolina corporation, and plaintiff purchased and ate the candy bar in Kansas.

## FACTS

Defendant Standard Candy is in the business of manufacturing candy bars, including the Goo Goo Cluster candy bar, and Jimbo's is a peanut product manufacturer and peanut processor who sells peanuts and products to the food industry, including the defendant Standard Candy. Plaintiff purchased a Goo Goo Cluster candy bar in Overland Park, Kansas. As he bit into it, he claims he encountered an undeveloped peanut. The biting of the peanut, he contends, caused injury to his tooth and jaw. In particular, plaintiff argues his tooth split, he continues to have problems with his jaw locking, and he has suffered hearing loss. Plaintiff listed two dental experts, but he has not listed any experts regarding an undeveloped peanut.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970).  Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings, but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor.  *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Facts are viewed in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998).  In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations.  *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In passing on a motion for summary judgment, it is not the court's role to decide the merits.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter).  The court must simply determine whether there exists a genuine dispute of material fact.  *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## DISCUSSION

### A. Defendant Standard Candy's Motion for Summary Judgment[1]

#### *1. Strict Liability and Breach of Warranty*

Standard Candy contends that plaintiff cannot recover on the basis of strict liability or breach of warranty.  Standard Candy argues there are two potential theories of recovery for plaintiff: (1) the "foreign-natural" doctrine, and (2) "reasonable expectation of the consumer" tests.  Standard Candy argues that there are no clear cases in Nebraska dealing with this issue, and thus it relies on cases from other jurisdictions to show that no matter what doctrine Nebraska follows, the plaintiff would not win in any event.  Standard Candy contends that plaintiff must produce an expert under either of these theories and has failed to do so.

The "foreign-natural" doctrine provides there is no liability if the food product is natural to the ingredients; whereas, liability exists if the substance is foreign to the ingredients, and the manufacturer can be held liable for injuries.  *See, e.g., Mitchell v. T.G.I. Friday's*, 748 N.E.2d 89, 93 (Ohio App. 7th Dist. 2000) (applying both tests, but concluding that a consumer who eats meat dishes knows there might be bones present under the

---

[1]Standard Candy notes that plaintiff filed a second amended complaint, Filing No. 101, wherein it added a cause of action for failure to warn.  Standard Candy states that cause of action is not currently before the court in this motion for summary judgment.

4

foreign natural doctrine). Standard Candy argues that if Nebraska follows this doctrine it is clearly not liable. The plaintiff's injuries were a result of a peanut which is part of the ingredient found in a Goo Goo Cluster, and the plaintiff has produced no expert to the contrary.

Likewise, under the "reasonable expectation of the consumer" doctrine, Standard Candy argues the plaintiff cannot assert liability. *Jackson v. Nestle-Beich, Inc.*, 589 N.E.2d 547, 548 (Ill. 1992). In the *Jackson* case, the court stated: "The reasonable expectation test provides that, regardless whether a substance in a food product is natural to an ingredient thereof, liability will lie for injuries caused by the substance where the consumer of the product would not reasonably have expected to find the substance in the product." *Jackson*, 589 N.E.2d at 548. Standard Candy argues that under this test, plaintiff would be reasonably aware of peanuts in a Goo Goo Cluster candy bar. Further, Standard Candy contends that this is not a fact issue, but is a legal one. *See Mitchell,* 748 N.E.2d at 94 (clam shell piece in a clam strip was, as a matter of law, under either foreign natural test or reasonable expectation test, reasonably expected to be there by the consumer); *Allen v. Grafton*, 164 N.E.2d 167, 174-75 (1960) (oyster shell in fried oysters did not create liability); *Koperwas v. Publix Supermarkets, Inc.*, 534 So.2d 872, 873 (Fla. App. 1988) (clam shell in clam chowder known to consumer and can be expected to reasonably guard against it); *Ex parte Morrison's Cafeteria of Montgomery, Inc.*, 431 So.2d 975, 979 (Ala. 1983 ) (bone in fish filet not unreasonably dangerous). Standard Candy again contends that it does not matter which test is used, as under either test it is entitled to judgment as a matter of law, because the plaintiff does not have an expert designated in this case to testify about an undeveloped peanut.

### *2. Negligence/Res Ipsa Loquitur*

Likewise, Standard Candy argues that plaintiff is unable to prove negligence or *res ipsa loquitur* in this case. Plaintiff contends that: "In order to prevail in a negligence action, a Plaintiff must establish the Defendant's duty to protect the Plaintiff from injury, a failure to discharge that duty, and damages caused by failure to discharge that duty. *National American Ins. Co. v. Construction Bonding Co.*, 719 N.W.2d 297, 302 (Neb. 2006). Standard Candy again contends that plaintiff cannot show that it failed to discharge any duty to plaintiff, nor has plaintiff offered any expert evidence that the peanut was undeveloped. For that reason, contends Standard Candy, the *res ipsa* claim must also fail. Standard Candy argues there is no evidence that allowing an undeveloped peanut is negligence in and of itself, and that the plaintiff failed to hire an expert to prove either of these two claims.

**B. Plaintiff's Response to Defendant Standard Candy's Motion for Summary Judgment**

In response to Standard Candy's motion for summary judgment, plaintiff makes the following arguments. First, plaintiff contends it could not determine the need for an expert, as Standard Candy failed to timely produce required documents and rescheduled imperative depositions three different times, after plaintiff arrived out of state for the depositions. Second, plaintiff contends that Standard Candy placed its product on the market with inferior peanuts, that Standard Candy had knowledge of numerous previous and similar injuries dating back to at least 1991, and that Standard Candy failed to warn the general public of the danger. Plaintiff argues that this is an undeveloped peanut, much like a rock.

6

Plaintiff took the deposition of Scott Sherry, Filing No. 106, Ex. 1, on November 8, 2007. Sherry had been employed by Standard Candy since September of 2003. Sherry agreed that if peanuts have skins on them, it would make it difficult to find peanuts that should not be used. *Id.* at 18:7-10. He also knows that undeveloped peanuts are being included in Standard Candy Products. *Id.* at 19:1-10. Standard Candy assumes the bad peanuts have been culled out and does nothing to reinspect beyond what is done by Jimbo's. *Id.* at 22:3-22. During his employment Sherry inspected claims by persons who believe they have undeveloped peanuts. *Id.* at 24:6-17. Plaintiff says that Standard Candy has known as far back as 1991 that there are undeveloped peanuts in their candy bars. *Id.* at 38:14-21. He was never asked to investigate any claims made by plaintiff in March of 2004. *Id.* at 31:17-22. Sherry testified that he knows that undeveloped peanuts split and runners with skins on them cannot be eliminated. *Id.* at 39:9-12. He also knows that there is a risk of an undeveloped peanut in the candy bars that they sell. *Id.* at 42:17-20. When he attempted to cut through one peanut in plaintiff's candy wrapper during the deposition, Sherry was unable to initially do so. *Id.* at 66:15-21. He determined that it looked more like a burnt peanut. *Id.* at 67:1-6. He agreed this peanut was either undeveloped or overcooked which made it rock-like. *Id.* at 74:16-23. Sherry agreed in his deposition that Standard Candy knew as far back as 1997 that rock like peanuts were included in the candy bars. Plaintiff contends that Sherry is the person Standard Candy relies on to make a determination regarding an over-roasted or undeveloped peanut and is their expert in this regard. *Id.* at 92:9-19.

Plaintiff also took the deposition of Zhaneta Shraybman who has worked for Standard Candy since 2002 and deals with incoming claims. She testified as to exhibits

showing injuries as far back as 1991 where people damaged their teeth on hard or rock-like peanuts in the Goo Goo Candy Bar. Filing No. 106-4, 61:10-14. She also testified that Standard Candy had placed no warning on any of its wrappers about this risk. *Id*. at 61:18-23. She processed the same type of a claim within the last month previous to her deposition. *Id*. at 75:20-25; 76:1.

Plaintiff argues this court should adopt the reasonable expectation test, as even the defendant Standard Candy admits it is the more modern and accepted approach. The plaintiff cites a series of cases in his brief indicating disfavor with the foreign-natural approach. Further, plaintiff argues there is no need for an additional expert in this case. The two employees of Standard Candy will be sufficient, argues plaintiff, to make his case.

### C.  Defendant Standard Candy's Reply

Standard Candy argues that Sherry testifies that the nut in question does not appear to be undeveloped but "possibly burnt in the process." Filing No. 106-2, 67:4-6. Further, Sherry testifies that "I haven't really had a lot of experience looking at over roasted. But then again, I can't say I am an expert on undeveloped either." *Id*. at 73:23-74:1. According to Standard Candy, Sherry repeatedly says he is not an expert throughout his testimony. Filing 106-3, 78:20 and 79:19, and that he is engaging in speculation. Filing No. 106-2, 71:22, 72:7-8. Standard Candy argues that this testimony is speculative and not expert testimony. *J. B. Hunt Transfer, Inc. v. General Motors Corp*., 243 F.3d 441, 444 (8th Cir. 2001) (speculative expert testimony is not competent and contributes nothing to evidentiary basis). Further, argues Standard Candy, plaintiff has provided no expert testimony that a candy manufacture can even separate such a peanut from other peanuts. Mr. Paul Britton of Jimbo's Jumbos testified as to all the processes their company goes through to sort and

8

screen the peanuts. He testified that there is no method for completely keeping all undeveloped peanuts from making it through the processing system. Paul Britton Dep., Filing No. 106-10, 19:16-21.

### D. Conclusion

The court concludes that the motion for summary judgment must be denied. There are significant factual disputes that must be decided by the jury. The court finds the plaintiff does not necessarily need an expert to prove his case. Rule 701 states:

> Non-expert witnesses may only testify to opinions or inferences which are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witnesses' testimony or a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. of Evid. 701. The testimony of both Standard Candy's employees, Sherry and Shraybman, and Paul Britton's testimony, are sufficient to establish the existence of both burnt and undeveloped peanuts.[2] The court finds these issues are sufficiently easy that an additional expert is not necessary in this case. "[T]estimony of an expert witness is particularly appropriate where the trier of fact . . . is presented with evidence of a highly technical nature." *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 702 (8th Cir. 1975). However, courts have permitted members of a business to testify about the day-to-day affairs of the business based on their own knowledge and participation in that business. Fed. R. Civ. P. 701 (Advisory Committee Notes, 2000 Amendments); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1221223 (11th Cir. 2003)*; American General Life Ins. Co. v. Schoenthal Family*, 2008 WL 160630 *5 (N.D. Ga. January 15,

---

[2]For the record, plaintiff has listed two dentists as experts in his case as well as Mr. Sherry. Filing No. 105.

2008). Lay opinion testimony is permissible based on participation and observations. *In re Air Crash at Little Rock Arkansas, on June 1, 1999 v. American Airlines, Inc.*, 291 F.3d 503, 515 (8th Cir. 2002) ("Rule 701 requires that lay witness opinion testimony need only be rationally based on perception and helpful to a determination of a fact in issue. . . . Personal knowledge or perceptions based on experience is sufficient foundation for such testimony."); *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 351 (8th Cir. 1994 ). Mr. Sherry will be able to testify as to his knowledge regarding undeveloped peanuts based on his work observations. In addition, he might very well qualify as an expert in this regard. Additionally, Ms. Shrayban and Mr. Britton will be permitted to testify pursuant to Fed. R. Civ. P. 701 based on their experience working for Standard Candy. Accordingly, defendant Standard Candy's motion for summary judgment is denied.

### E. Motion for Summary Judgment by Third-Party Jimbo's Jumbos, Inc.

Jimbo's argues that Kansas law governs Standard Candy's third-party claim against it. The law of the forum state applies. *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002). Jimbo's argues that the court must look at the Nebraska choice of law rules for injury actions. Nebraska law requires the law of the state where the injury occurred to apply. *Harper v. Silva*, 399 N.W.2d 826, 828 (Neb. 1987).[3]

Jimbo's contends that the shipment of peanuts were tested and inspected pursuant to federal regulations on May 21, 2003. The inspection found the peanuts to be suitable for human consumption and containing "runner with splits." These peanuts with "runner with splits" may contain 1.5% unshelled peanuts and damaged kernels, 2.5% unshelled peanuts and damaged kernels and minor defects and .2% foreign materials. 7 C.F.R. § 996.31.

---

[3] Only the third-party defendant JImbo's briefed the issue of conflict of laws. While the court is inclined to agree that Kansas law will apply in this case, the parties should brief this issue in their trial brief.

10

Jimbo's contends that prior to shipping, it ran the peanuts through a concentrated cleaning machine that picks out damaged or foreign objects. The quality control staff at Jimbo's also took samples for inspecting for these same defects. Jimbo's contends that there is no equipment in existence to remove all undeveloped peanuts from the processed peanuts. Further, Kansas product liability law provides that when the injury-causing product was in compliance with the regulatory safety standards, the product is not defective unless "a reasonably prudent product seller could and would have taken additional precautions." KSA 60-3304(a).[4]

Because it complies with and passes all government inspection requirements and in addition has internal quality control, Jimbo's argues it cannot be held liable to third-party plaintiff Standard Candy under any theory. Further, Jimbo's contends it has complied with all of the state of the art industry standards.

Jimbo's argues that there is no evidence identifying the object that plaintiff bit, nor is there an expert testifying about this object. Jimbo's further argues that it is just as likely that whatever plaintiff bit into came from something mixed in at Standard Candy's manufacturing plant. Thus, contends Jimbo's, Standard Candy's claim against Jimbo's fails. There is no evidence, argues Jimbo's, that it failed to follow the standard of care or that it failed to comply with the standard under all state law and under 7 C.F.R. § 996.31 and 21 C.F.R. § 110.80, or that Jimbo's should have done more than it already did.

Under Kansas law, if one complies with the industry standards, that is evidence of due care. *Cerretti v. Flint Hills Rural Elec. Co-Op Ass'n,* 837 P.2d 330, 356-357 (Kan.

---

[4]Even if this court determined that Tennessee law applied, there is a similar rebuttable presumption that the product was not unreasonably dangerous if it complied with safety regulations. T.C.A. § 29-28-104. Jimbo's further argues that if this court applied North Carolina law, the standard of care would be the same as 7 C.F.R. § 996.31. *See Shenk v. HNA Holdings, Inc.,* 613 S.E.2d 503, 507 (N.C. App. 2005) (OSHA regulations establish the standard of care).

1992). Jimbo's argues that neither the plaintiff nor the defendant Standard Candy has argued that it should have done anything more than it did in processing the peanuts. Jimbo's used the industry-wide standard and practice. Thus, it asks this court to grant it summary judgment and dismiss it as a matter of law.

The court finds Jimbo's motion for summary judgment must be granted. First, the plaintiff did not sue Jimbo's and has made no specific claims against Jimbo's. In that same regard, although Standard Candy has sued Jimbo's, no evidence has been offered by Standard Candy that Jimbo's breached any standard of care. Standard Candy offers no deposition testimony or affidavits to support its third-party claim. The court also notes that it is not alleged that Jimbo's ever provided Standard Candy with anything other than what was ordered or received. The court has thoroughly reviewed the record and has viewed the facts in the light most favorable to Standard Candy. The court finds that Standard Candy has failed to meet its burden of coming forth with any evidence that would create a triable fact for the jury. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d at 990. Accordingly, the court will grant Jimbo's motion for summary judgment.

THEREFORE, IT IS ORDERED:

1. Defendant Standard Candy's motion for summary judgment, Filing No. 49, is denied; and

2. Third-party defendant Jimbo's motion for summary judgment, Filing No. 53, is granted.

DATED this 19th day of March, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge