IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES NEWTON, II, | ) | |
| | ) | 8:06CV242 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| STANDARD CANDY COMPANY, INC., | ) | |
| a Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant Standard Candy's motion for summary judgment pursuant to Fed. R. Civ. P. 56, Filing No. 125. Plaintiff filed this action against the defendant Standard Candy under the theories of negligence, breach of contract for implied warranty of merchantability, and strict liability. Filing No. 1. Plaintiff later filed a second amended complaint and added a failure to warn claim. Filing No. 101. Initially, plaintiff filed this action in Scottsbluff, Nebraska, but defendant removed the case to Nebraska federal court. Filing No. 3. Thereafter, defendant Standard Company filed a third-party complaint against Jimbo's Jumbos, Inc. ("Jimbo's"), the supplier of the peanuts that were in the Goo Goo Cluster purchased by the plaintiff which is the subject of this litigation, seeking subrogation, contribution and indemnity. Filing No. 7.[1] For purposes of jurisdiction and conflict of laws, plaintiff is a resident of Nebraska, Standard Candy is a resident of Tennessee, and plaintiff purchased and ate the candy bar in Kansas. The court determines that the motion for summary judgment shall be granted in part and denied in part.

---

[1]This court granted summary judgment and dismissed Jimbo's from the lawsuit. Filing No. 115.

## FACTS

Defendant Standard Candy is in the business of manufacturing candy bars, including the Goo Goo Cluster candy bar.  Plaintiff purchased a Goo Goo Cluster candy bar in Overland Park, Kansas.  As he bit into it, he claims he encountered an undeveloped peanut.  The biting of the peanut, he contends, caused injury to his tooth and jaw.  In particular, plaintiff argues his tooth split, he continues to have problems with his jaw locking, and he has suffered hearing loss.  Plaintiff listed two dental experts, but he has not listed any experts regarding an undeveloped peanut.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

2

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings, but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor.  *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Facts are viewed in the light most favorable to the nonmoving party.  "[I]n order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998).  In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations.  *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In passing on a motion for summary judgment, it is not the court's role to decide the merits.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter).  The court must simply determine whether there exists a genuine dispute of material fact.  *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

3

The court must look at the Nebraska choice of law rules for injury actions. Nebraska law requires application of the law of the state where the injury occurred. *Harper v. Silva, 399 N.W.2d 826, 827-28 (Neb. 1987)*. The law of the forum state applies. *Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002)*. Based on the facts set forth in this case, the court concludes that Kansas law, the location of the injury, governs this case.

## DISCUSSION

Following the filing of the amended complaint, Standard Candy again contends that plaintiff cannot show that it failed to discharge any duty to plaintiff, nor has plaintiff offered any expert evidence that the peanut at issue in this case was undeveloped.[2] Standard Candy also argues there is no evidence that allowing an undeveloped peanut is negligence in and of itself and that the plaintiff failed to hire an expert to prove any of its claims.

*Plaintiff's Arguments*

In response to Standard Candy's motion for summary judgment, plaintiff makes the following arguments. Plaintiff contends that Standard Candy placed its product on the market with inferior peanuts, that Standard Candy had knowledge of numerous previous and similar injuries dating back to at least 1991, and that Standard Candy failed to warn the general public of the danger. Plaintiff argues that this is an undeveloped peanut, much like a rock.

Plaintiff argues that under the strict liability theory, a plaintiff is not required to establish misconduct by the maker or seller but, instead, is required to impugn the product. The plaintiff must show the product is in "a defective condition unreasonably dangerous,"

---

[2]In its previous ruling, the court denied defendant's motion for summary judgment. However, the court has determined it should revisit its decision.

4

which means that it must be defective in a way that subjects persons or tangible property to an unreasonable risk of harm. Prosser and Keeton, Law of Torts § 99, p. 695 (5th ed. 1984). A product can be defective in one of the following three ways: (1) a flaw is present in the product at the time it is sold; (2) the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed; or (3) the product, although perfectly manufactured, contains a defect that makes it unsafe. *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 924 (1990), citing Prosser, § 99, pp. 695-98.

Plaintiff took the deposition of Scott Sherry, Filing No. 106, Ex. 1, on November 8, 2007. Sherry had been employed by Standard Candy since September of 2003. Sherry agreed that if peanuts have skins on them, it would make it difficult to find peanuts that should not be used. *Id.* at 18:7-10. He also acknowledged that undeveloped peanuts have been found in Standard Candy Products. *Id.* at 19:1-10. Standard Candy assumes the bad peanuts have been culled out and does nothing to reinspect beyond what is done by Jimbo's. *Id.* at 22:3-22. During his employment Sherry inspected claims by persons who believe they had undeveloped peanuts. *Id.* at 24:6-17. Plaintiff says that Standard Candy has known as far back as 1991 that there are undeveloped peanuts in their candy bars. *Id.* at 38:14-21. Sherry testified that he was never asked to investigate any claims made by plaintiff in March of 2004. *Id.* at 31:17-22. Sherry further testified that he knows that undeveloped peanuts split and runners with skins on them cannot be eliminated. *Id.* at 39:9-12. He also knows that there is a risk of an undeveloped peanut in the candy bars that they sell. *Id.* at 42:17-20. When he attempted to cut through one peanut in plaintiff's candy wrapper during the deposition, Sherry was unable to initially do so. *Id.* at 66:15-21.

5

He determined that it looked more like a burnt peanut.  *Id*. at 67:1-6.  Sherry agreed in his deposition that Standard Candy knew as far back as 1997 that rock like peanuts were included in the candy bars.  Plaintiff contends that Sherry is the person Standard Candy relies on to make a determination regarding an over-roasted or undeveloped peanut and is their company expert in this regard.  *Id*. at 92:9-19.

Plaintiff also took the deposition of Zhaneta Shraybman who has worked for Standard Candy since 2002 and deals with incoming claims.   She testified as to exhibits showing injuries as far back as 1991 where people damaged their teeth on hard or rock-like peanuts in the Goo Goo Candy Bar.  Filing No. 106-4, 61:10-14.  She also testified that Standard Candy had placed no warning on any of its wrappers about this risk.  *Id*. at 61:18-23.   She processed the same type of a claim within the last month previous to her deposition.  *Id*. at 75:20-76:1.

*Standard Candy's Arguments*

Standard Candy argues that the Kansas Supreme Court has stated that "the product liability act [K.S.A.. §60-3301 *et seq*.] applies to all product liability claims regardless of the substantive theory of recovery." *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915, 930 (1990). Standard Candy argues that under Kansas law, specifically Kansas Revised Statute § 60-3304(a), a product which complies with legislative regulatory standards or administrative regulatory standards is deemed not defective "unless the claimant proves by a preponderance of the evidence that seller could and would have taken additional precautions."

Further, Standard argues it met the regulatory requirements; that plaintiff has failed to show Standard did not follow the standard of care; or that Standard failed to comply with

the peanut standards under state law and under 7 C.F.R. § 996.31 and 21 C.F.R. § 110.80; or that Standard should do more than it already does with regard to peanut safety. Standard argues that Jimbo's, the supplier, tested and inspected the peanuts pursuant to federal regulations on May 21, 2003. These peanuts with "runner with splits" may contain 1.5% unshelled peanuts and damaged kernels, 2.5% unshelled peanuts and damaged kernels and minor defects and .2% foreign materials. 7 C.F.R. § 996.31. Jimbo's argued in its previous motion for summary judgment that prior to shipping, it ran the peanuts through a concentrated cleaning machine that picks out damaged or foreign objects. The quality control staff at Jimbo's also took samples for inspecting for these same defects. Further, Jimbo's argued that there is no equipment in existence to remove all undeveloped peanuts from the processed peanuts. Standard contends the peanuts that it used in the Goo Goo Cluster bitten into by plaintiff complied with legislative and administrative regulations, and these regulations deal with human consumption.

Standard Candy argues that Sherry testifies the nut in question does not appear to be undeveloped but "possibly burnt in the process." Filing No. 106-2, 67:4-6. Further, Sherry testifies that "I haven't really had a lot of experience looking at over roasted. But then again, I can't say I am an expert on undeveloped either." *Id.* at 73:23-74:1. According to Standard Candy, Sherry repeatedly says he is not an expert throughout his testimony, Filing No. 106--3, 78:20 and 79:19, and that he is engaging in speculation. Filing No. 106-2, 71:22, 72:7-8. Standard Candy argues that this testimony is speculative and not expert testimony. *J. B. Hunt Transport, Inc. v. General Motors Corp*., 243 F.3d 441, 444 (8th Cir. 2001) (speculative expert testimony is not competent and contributes nothing to evidentiary basis). Further, argues Standard, plaintiff has provided no expert testimony that a candy

7

manufacturer can even separate such a peanut from other peanuts.  Mr. Paul Britton of

Jimbo's Jumbos testified as to all the processes their company goes through to sort and

screen the peanuts.  Again, he testified that there is no method for completely keeping all

undeveloped peanuts from making it through the processing system.  Paul Britton Dep.,

Filing No. 106-10, 19:16-21.

*Analysis*

In a products liability failure to warn claim, the standard for liability is whether the

failure to warn was "'reasonable under the circumstances.'" *Miller v. Lee Apparel Co., Inc.,*

881 P.2d 576,587 (Kan. App. 1994) (quoting *Richter v. Limax Int'l, Inc.,* 822 F. Supp. 1519,

1521 (D. Kan.1993)*, rev'd on other grounds,* 45 F.3d 1464 (10th Cir.1995)); *see also*

*Duffee ex rel. Thornton v. Murray Ohio Mfg. Co.,* 879 F.Supp. 1078, 1081 (D.Kan.1995)

(same); *Schoen ex rel. Schoen v. Spotlight Co., Inc*. 979 F. Supp. 1379, 1384 (D.Kan

1997) (same).   K.S.A. § 60-3305 provides that the duty to warn shall not extend to

"dangers, hazards or risks which are patent, open or obvious and which should have been

realized by a reasonable user or consumer of the product."

With regard to food, the Kansas courts have held:

> We consider it to be of no consequence that this action proceeded on the
> theory of strict liability of one who prepares and sells a food product, a tort
> action, rather than the theory of implied warranty of fitness for consumption
> as in the Cola cases. Strict liability was adopted by our Supreme Court in
> *Brooks v. Dietz,* 218 Kan. 698, 699-703, 545 P.2d 1104, 1105-1108 (1976),
> after such adoption was forecast by *Symons v. Mueller Co., 493 F.2d 972
> (10th Cir. 1974). Brooks* adopted the doctrine of Restatement (Second) of
> Torts §402A, imposing liability on a seller of a product that is defective and
> dangerous to a user even though "the seller has exercised all possible care
> in the preparation and sale of his product."

.

*Hazelton v. Safeway Stores, Inc.*, 745 P.2d 309 (Kan. App. 1987).   The court in *Professional Lens Plan, Inc., v. Polaris Leasing Corp.*, 675 P.2d 887, 891-92 (Kan.1984) held:  "Where personal injury or death is caused by unwholesome or contaminated food or drink, we have consistently held that liability may be imposed on the basis of an implied warranty that the food is fit for human consumption." (Citations omitted.) Likewise, an implied warranty has been extended to include beverage containers (citation omitted) as well as hair preparations.  (Citation omitted.)  *Id. at* 892.  Similarly, the court in *Robbins v. Alberto-Culver Co.*, 499 P.2d 1080 (Kan. 1972) held:  "In a general way we might point out that early in its history this court opined that where food is sold for human consumption there is an implied warranty on the seller's part that it is fit and wholesome for its intended use."  *Id. at* 1082.  (Citation omitted).  " In a much later case, (citations omitted) it was held in respect to the sale of food intended for human consumption that the manufacturer, the packer and each intermediate dealer, as well as the retailer, each impliedly warrants that the food is wholesome and fit for immediate human consumption, whether or not it be sold in bulk or sealed packages or containers."  *Id. at* 1083.

In addition, Kansas product liability law provides that when the injury-causing product was in compliance with the regulatory safety standards, the product is not defective unless "a reasonably prudent product seller could and would have taken additional precautions."  K.S.A § 60-3304(a).  The inspection found the peanuts to be suitable for human consumption and containing "runner with splits."  Further, Kansas product liability law provides that when the injury-causing product was in compliance with the regulatory safety standards, the product is not defective unless "a reasonably prudent product seller could and would have taken additional precautions."  K.S.A § 60-3304(a).  Under Kansas

9

law, if one complies with the industry standards, that is evidence of due care. *Cerretti v. Flint Hills Rural Elec. Co-Op Ass'n,* 837 P.2d 330, 356-357 (Kan. 1992). There is no evidence or expert testimony indicting that plaintiff should have done something differently or that a reasonable seller would have taken additional precautions. There is no showing that Sherry is an expert who can testify about additional steps Standard should have taken to make this candy bar safer for human consumption. Federal Rule of Evidence 701 states:

> Non-expert witnesses may only testify to opinions or inferences which are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witnesses' testimony or a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The court in *City of Arkansas v. Bruton,* 166 P.3d 992, 1006-07 (Kan. 2007), dealt with a situation where defendant failed to present the court with any expert testimony regarding the construction and maintenance of a dike. The court stated: "Prior Kansas cases indicate that when the resolution of a case turns on facts that are highly technical or scientific or requires expertise outside the scope of common knowledge, expert testimony on such subjects may not be controverted except by the opinions of other experts." *Id.* at 1006. As a general rule, only where the subject matter is not complicated and it is elementary or of common knowledge are lay people serving as jurors allowed, without the need of an expert, to draw proper conclusions from given facts and circumstances. *Knowles v. Burlington Northern R. Co.,* 856 P.2d 1352, 1354 (Kan. App. 1993).

The court concludes that Standard's motion for summary judgment should be granted in part and denied in part. The court agrees with Standard Candy that most of the cases relied on by the plaintiff involved the use of experts. The *Savina* case involved a

medical dye used in myelograms and relies on a question of fact created by plaintiff's experts. In *Schoen*, the court determined that summary judgment would be denied in an ignited nightgown case because plaintiff's expert created a material fact regarding nightgown standards. The court finds that all theories, except the failure to warn claim, require technical or specialized knowledge as described in *Bruton*. The court further finds that plaintiff has not offered any evidence, in the form of expert testimony, that a reasonably prudent seller could and would have taken any additional precautions; that there is no expert evidence that these are inferior peanuts; that there is no expert evidence that these peanuts are unreasonably dangerous or defective; that there is no expert evidence that the peanuts are unfit for their ordinary use. Plaintiff offers no expert opinion to support any of these theories. "[T]estimony of an expert witness is particularly appropriate where the trier of fact . . . is presented with evidence of a highly technical nature." *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 702 (8th Cir. 1975). The court finds these issues are not sufficiently easy for a jury to decide without the aid of an expert in this case. Accordingly, the court shall grant summary judgment with respect to all claims against Standard Candy except for the failure to warn claim, as discussed hereinafter.

The court finds summary judgment shall be denied with regard to the plaintiff's claim for failure to warn. The deposition testimony of Sherry and Shraybman clearly shows that, since sometime in the 1990s, Standard had knowledge that its product caused damage to the teeth and jaws of its consumers, and such evidence creates a material fact as to whether Standard Candy had a duty to warn the consumer. The court is of the opinion that it does not take an expert to assist the trier of fact in determining whether Standard should have warned consumers of the potential hazards of its Goo Goo Cluster candy bar.

A jury is able to decide whether this failure to warn is "reasonable under the circumstances." *Miller v. Lee Apparel Co., Inc.,* 881 P.2d at 587.

Accordingly, summary judgment will be granted on all theories except the duty to warn claim.

THEREFORE, IT IS ORDERED that defendant Standard Candy's motion for summary judgment, Filing No. 49, is granted in part and denied in part as set forth herein. This case shall proceed to trial on plaintiff's theory regarding Standard Candy's failure to warn.

DATED this 12th day of September, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge